The next argued case is No. 162716, Creative Technology Ltd. v. The International Trade Commission, Mr. Baker. Good morning, Your Honors. May it please the Court. Creative was one of the pioneers in the field of portable music players, and in developing their Nomad jukebox product, they developed a real device with a real user interface that solved real problems with the user interfaces of the prior art portable media players. But despite the fact that the claims improved an existing technological process, the ITC found that the claims were directed to an abstract idea, because hierarchies had been used in other contexts before. According to the other parties, in order to be patent eligible, it's not enough that the claims recite a particular solution to a problem in a technological field, but further, requires that the solution must not already have been known in the art, even in other contexts. But that cannot be the test for abstractness under Section 101, because that's part of the test of obviousness under Section 103. And as this Court stated in Enfish and subsequent cases, the correct inquiry at Step 1 is simply whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea. And under the proper legal test, the claims here easily satisfy Section 101. It was undisputed that there were problems with the user interfaces of prior art portable media players. The specification talks about that. And it was undisputed that the patent provided solutions to those problems and improved an existing technological process. And the patent specification, again, describes the improvement and describes the advantages of the improvements. And that's all Section 101 requires. Whether that same solution had been used before in other contexts, that's a question of patentability. That's not a question of patent eligibility. This case is very similar to the training technologies case in numerous respects. Both cases involved user interfaces and improvements to user interfaces that solve problems. And there's no dispute that user interface technology is a technological field. And in training technologies, the Court held that the claims subject matter is directed to a specific improvement to the way computers operate. And the same thing applies here. The specification of the patent tells us that, and the testimony at the hearing tells us that. And in training technologies, the Court also made clear that it was not ruling or considering patentability issues. Because as you point out, patentability in terms of 103 and 102 is not a consideration under 101, why is it that you argue that the court below erred in not considering secondary considerations? What we're arguing, Your Honor, is that there's objective evidence that's relevant primarily under Step 2, possibly Step 1 as well, as to whether the invention solved the problem and whether it was a routine and conventional solution. And so we're not arguing it as a matter of obviousness, but the same considerations that are relevant for an obviousness determination are also relevant and can inform questions under Section 101 when there's an issue about whether a solution actually solved the problem and whether that solution was routine and conventional. So for example, there were articles talking about how great the user interface was on the creative Nomad Jukebox product. And it compared it to other products, like Arco's product, where it said the user interface was maddening. And that confirms or at least supports and is relevant to the fact that it was not a conventional and routine solution that was used in this product. Do you think that only applies to abstract ideas, the exception or to other portions of 101 and eligibility? I'm very confused how you're bringing this in. I mean, I'm sure you're familiar with Ariosa, which had a, I think everybody agrees, a fairly breakthrough method of doing fetal testing, but nonetheless was found obvious because all it did was implement a law of nature using conventional methods. I mean, certainly the commercial success and the breakthrough of that was substantial, but I feel that it had no bearing on the question of whether it was an eligible patent or not. Yes, I think we're focusing on the abstract idea exception and the argument that... Why does that make any difference? Because the court's precedents and the Supreme Court's precedents explain that when an invention purports to improve an existing technological process, it's generally going to be a patent-eligible invention. Now, in some cases, the invention might simply just be claiming the abstract idea, and that's why it's important, and EnFISH makes this clear, that you have to look to see what is the focus of the claims. Is the focus on the claims the actual specific improvement that's asserted, or is it just... The focus on the problem, that it wasn't whether the contribution, the technological change, could have been claimed specifically and more precisely in a way that would have avoided the abstraction, but that the claims that are being sought, at least the broadest claims, are so broad that they are abstract. They're just being claimed too broadly when you say that, what is the invention, and it should be looked at under 102 or 103. Yes, but when you're seeking a claim which is broader than that which is said to be the invention, you encounter the concept of abstract idea, and it seems to be the history of these section 101 cases, the breadth of the claim, and how do you overcome that issue here? That seems to... Reading the decision of the ITC, that was a significant concern. Yes, Your Honor. So what the ITC did is what the court has said is improper to do, and EnFISH and other institutions have written at a high level of abstraction and concluded it's simply directed to the idea... Because it was written at a high level of abstraction. But there are specific details in the claims, in both the independent claim and the dependent claim, providing specificity. The claims don't simply say, use hierarchies to access content. It talks about a specific sequence of three screens, the user interaction, what's displayed on each screen, the user interactions that take you to the next screen, and then the user specificity that the content that's accessed and then added to a playlist is added to a active queue or is added as a group to a queue or to be played. And that's consistent with the fact that these claims are not directed to a new way to code or programs a user interface. It's directed to the design of the user interface. And user interface design is part of the field of human-computer interaction, which is a recognized interdisciplinary field. And Professor Foley testified about that at trial, that it's a subject of active research in academia and in industry. And in user interface design, what's important is the sequence of steps. Just like in training technologies, the claims talked about the sequence of steps, what's then displayed, and by having that sequence of interactions, it improves the technology. It makes it more user-friendly, makes it more efficient, and it makes for a better product. And so, I think that there is specificity in the claims. It's not simply saying, use hierarchies to access content. Well, yes, there are lines to be drawn, and we all know that one of the problems is the 101 line that applies in all cases. And so here, the ALJ looked at the case and thought that there's a line to be drawn here, but that the 101 line for the broadest claims just hasn't been crossed. Well, I think if you look at the decision closely, it appears that the ALJ didn't really consider whether the patent was solving a problem. He simply looked at the claims and said, the claims are about using hierarchies to access content, and failed to consider the specific problems that were being solved. But that's not enough. Bilski solved a problem of hedging commodities. That wasn't enough. Oh, true, because it was not solving a technological problem. In many of the cases, both at the Supreme Court and at this court, the claims are simply taking long-standing human activity and saying, doing it on a computer. And that was the case in Bilski, and you certainly can't do that. But in many of these cases, or most of these cases, where the court has found a lack of patent eligibility, it's because there was no technological problem being solved. And that's quite different here. The specification is absolutely abundantly clear that there was a technological problem and the patent provided a solution to it. And that's the focus of the claims. What in Claim 1, particularly, do you think we should look to to say that it's solving a technological problem? It goes beyond just saying, let's have a hierarchical way of accessing music. What you should look at is the description in the specification of what the primary is. No, I want to start with the claim language. This is the problem with these cases, is they have incredibly broad claim language. They claim abstract ideas and don't tie them to the specific invention that you are trying to say is patentable. Yes. So in the claim language, it recites the specific sequence of screens of displaying categories and then allowing the user to select a category and then displaying subcategories under that category and then allowing the user to select a subcategory and then displaying the appropriate items and then allowing the user to access. So it's the screens. It's a sequence of screens. I guess it's also important to recognize that there's many other ways of using hierarchies to access content. In fact, one of the prior devices discussed in the proceeding below was the Hango device, which used hierarchies, but it didn't use three display screens. It displayed, it had three lines and it displayed the three levels of the hierarchy on a single display screen. And so the claims here are more specific than that. And so the claims here don't preempt or cover all different ways of doing hierarchies. They cover a particular way using a sequence of three display screens. And that is one aspect of the invention here. So just to clarify on the technical or technological problem being solved, it's the portable media player problem of not being as user friendly. How would you describe the technical problem that's solved? Yeah, the technical problem that's being solved is right from the specification in column one. It says as the storage capacity increases and songs are compressed to shorter file lengths, the number of songs that can be stored increases rapidly. Major problems facing the consumer are organizing and accessing the tracks. And then on a portable device, it says using such a compact user interface to navigate and select among hundreds of songs is inefficient and often frustrating. That the display screen can only show a few song titles at one time and the limited controls make it difficult for a user to arbitrarily select or move among songs. And that reflects the fact that the prior art used what's called sequential navigation. It would display one song at a time. You'd have to keep pressing next, go to the next song, and then next go to the next song after that. And that's what the specification describes as being inefficient and frustrated for the users. And so the problem being solved is how do you efficiently on a small screen device access content in an efficient and user friendly manner? OK, let's hear from the other side. We'll save you rebuttal time. Thank you. Ms. Morad. So I agree with the comments that you made to Appellant's Council that these claims don't solve a technological problem. So my issue with this, I think this is difficult. I mean, clearly the hierarchical stuff is an abstract idea. And if you just said, do this hierarchical system on a computer, I think it would comfortably fit in with all of our ineligibility decisions. But claim one, and I don't know if this is enough because it's still awfully high level and abstract to me, but it does talk about using three screens in successive order. Why isn't that enough to make it an eligible idea? Because it's solving the technical problem, as your friend says, of dealing with a small screen with limited controls and the like and improving the function of that unit. Well, the commission found that the hierarchical user interface with three levels, that was known in other contexts, like in the computing context. Well, I'm not disputing that. I mean, if this claim just said a method of selecting tracks from players using a hierarchical thing, saying go first to this, go first to that, go second to that, go third to that, this would be easy. It would be out. But it goes further and says the reason we're using this and we're going to do it on successive screens is because there's a limited functionality of MP3 players. The screen is small, the controls are small and the like. Why isn't that enough to confine it, make it narrow and make it specific enough to be eligible? Well, at page 32 of our brief, we address specifically that problem, that hierarchical organization was invented for the very purpose of being able to display or to review a larger amount of information in a limited display area. And there is substantial evidence in the record that shows that hierarchical categorization has been used in small, limited display areas. But doesn't that go to obviousness or anticipation? How does that show that it's abstract or not directed to a technological problem? Because when we review cases under 101, for example, under this court's decision in limiting the field of use of something that is already existing, an existing technological solution. I thought we looked to see whether it was abstract. Right. And so what Affinity Labs versus DirecTV stated is that limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract. So the fact that they're taking a hierarchical user interface You're saying the fact that it's known doesn't, the things, the fact that there's parts of it that is known doesn't make it any less abstract? Is that what you said? No. The fact that it was conventional and that they're merely limiting the field of conventional hierarchical user interface to a portable media player environment, that does not render the claims any less abstract. But setting that aside for a minute, how is it abstract? It is abstract because it's a method of organizing human activity. It is abstract because it's a fundamental practice that's long prevalent in our system. It is abstract because this held that the concept is abstract. And that's what the commission did here. It looked at Versada, for example, and stated that like Versada, it's a method of organizing information like content extraction. It's just storing information in an organized manner like intellectual ventures versus Capital One. It specifically said that an interactive interface is a generic element. In Apple versus Amaranth, this court held that just displaying menus on a graphical user interface is an abstract idea as well. And so the commission did exactly that, looked at the previous cases and determined that this claimed invention here is the same as what was done for decades in other contexts. For example, before you could walk to a record store and you would see that the songs are organized by genre, classic rock or jazz, then by artist and then by album. And so this is something that's been around for a long time, that humans have been doing for a long time. And what they're doing basically here is trying to claim that activity that's been around for a long time and apply it in the media. And this is not enough for two reasons. First, because it's just limiting the field of use, which is not patent eligible under Bilski and Affinity Labs. And also because the claims themselves, they don't recite a specific implementation. And the specific implementation has to be an unconventional implementation to the portable media player environment. In Inuit TLI, for example. Why isn't that specific innovated implementation the idea of going to successive screens for categories rather than displaying everything on one screen? In Inuit TLI, in Enfish, this court held that for the invention to be patentable, it has to be specific and unconventional. And the problem that the commission had with these claims is these organization methods have been around. No, no, you're really not answering my question. I agree with you that these organization methods are abstract and conventional or whatever you want to call them. What I want you to tell me is why the idea of using three separate screens to access this information as a new way of using a user interface isn't non-conventional or isn't in a technological improvement. Get out of the notion that the organization is the problem. I agree that. But this claim has the additional language that it uses successive screens because it's solving problems about portability, small screen, limited controls. Why isn't that enough? Correct. And at page 32 of our brief, we explain that the same successive screens have been used in the computing context. There is no dispute about that. The only argument that appellants are making here is that it was not done in the context of a portable media player. And so the successive screen, one screen… Man, that sounds very much like an obvious misargument, not like a one-on-one argument. Well, when you look at the cases that… When we talk about conventional, I thought we were talking about equipment. And certainly the equipment may be conventional, but I didn't think we were extending conventional to conventional ways of doing things. I'm not trying to be tricky. Do you have any case law for that? Sure. For example, there is in Affinity Labs versus Texas, it was reciting a method of providing wireless broadcast content to a cellular telephone. And so the graphical user interface was able to give that. And the court said, well, basically what you're doing is essentially limiting this abstract idea of providing wireless delivery of broadcast content to a cellular telephone. And that is not enough because it's conventional… That still sounds like you're talking about the equipment being conventional. No, I'm talking about… Not the idea of using that conventional equipment in a different way. At that time… I've got your answer. I'd like to point to Trade Index, for example, which is different from this case because the graphical user interface in that case had a specific and unconventional element to it. In that case, the graphical user interface had the static index. It was a trading system. And the trading system had the static index that was completely new, that was not used before. In this case, there was really no evidence of anything in the graphical user interface that was not already present in the prior art. My problem… You've made some good points today. But my problem is you keep on going into sounding like you're talking about that the abstract idea itself is conventional. But I don't think that's what we're supposed to do. Sometimes in looking at step two, we'll look and see whether there's conventional additional elements and whether those make it not abstract anymore. But I don't think that our analysis that this court has talked about… I don't think that it means that we just look at the overall idea of the claim and see whether it's conventional. I think that's 102, 103. So I think that your other answer about how you were saying that the idea that the display here is that it's an abstract idea, that it's analogous to a record store, that is making more sense to me. But I don't understand how… Sorry, I'm getting off on a tangent. But I agree with Judge Hughes, and I guess my question to you is what cases are you relying on to say that you look at the abstract idea itself and determine whether it's conventional? The commission looked at several cases, and as I mentioned, it looked at Rosada development, at intellectual ventures, at content extraction, and Amaranth. They recently decided Apple versus Amaranth. And in those cases, it was similar because, for example, Amaranth had these menus that were displayed in a hierarchical tree format, and the court found that that was an abstract idea. And in this case, similarly, we have a hierarchical presentation of information that was a fundamental practice that was done in the computing context. It was done in the record store context. And so you take something that was done for decades by humans, and you simply apply it to the context of a portable media player environment, that under Affinity Labs is not enough to render the claims any less abstract. The other issue is that the portable media player environment is merely a generic environment in which to carry out this abstract concept. There is no specific implementation to the portable media player environment. There is no, in the language of TLI, no inventive concept to a problem presented by combining the two, meaning the conventional user interface with the portable media player environment. And the commission did not rely on any one or two or one or three cases. All the cases that the commission relied on were under Section 101. Let's hear from your colleague. Mr. Bagatelle. Thank you. So can I just, I'm sorry to jump in, but you don't have much time. Can I just ask you, I know that in hindsight today, the idea of displaying this type of information, which I agree with you is abstract, so don't start there, on three successive screens, why is that not a technological innovation, particularly if we look around the time the patent was filed? Okay. So I think we're accepting the premise that the abstract idea here is to go take the hierarchical implementation at a three-level structure, and the question is, why isn't it innovative to go through screen one, screen two, screen three? Right. Instead of putting it all, I mean, if they said, here's this hierarchy, we're putting it on the computer screen, they lose. But they come up with the idea, and I do think that we have to consider that this is an MP3 player at a certain time, although they're not claimed limitations, so don't go there, but they are trying to solve a specific problem. And going from all in one screen to three screens may not be enough, but I'm not sure why it's not. Well, I don't think it is. And first of all, the abstract idea is a three-level hierarchy applied to a particular technological environment. So we're all in agreement there that that alone is not enough. So the question is, why is it inventive, an inventive step that transforms the claims to say, do it in screen one, then screen two, then screen three? I think that is minor post-solution activity, simply dictated by the size of the screen. This was not the first time that anybody applied the idea of a hierarchical organization to So it depends on the size of your screen. They were not even the first ones, as we've heard today. The Hongo actually applied it to a small screen. So depending on the size of the screen and the amount of the information you have, you're going to either use one screen, two screens, or three screens. That's not an inventive concept. That's not something that the patent says that this was our great new innovation. That's not described as what the great implementation is. There's nothing specific in the patent about how to The fact that you can fit something on one screen is dictated by the size of your screen. If your screen is large enough to fit things on two screens, you can do it that way. If your screen is not, you do it in three screens. But that is not the inventive concept here. I think that's a litigation-driven argument. One of the points that seems to have made an impression on the ALJ, and I guess it did on me, that their expert testified, these are general-purpose devices for handling email, address lists, and so on. That is, this is the breadth of interpretation of our claim that we're covering all general-purpose devices that handle email, address lists, calendar, and office applications, as distinguished from the portable media player. So that there is an interpretation which is indeed broad. However, in the interaction and the reexamination, they canceled some of the broadest claims. How does all of this fit together? So we're getting here to the claim construction of a patent. Well, to understand how it affects 101, because it was in deciding 101 that the ALJ referred to their experts' testimony of the breadth of what they're covering. I actually don't think the claim construction affects the 101 analysis at all. The claim construction, the main issue on claim construction is whether they disclaimed general-purpose devices during the reexamination, and we've explained why in fact they did. But the abstract idea at the heart of the claims is the same regardless of how you define the portable media player, whether it includes general-purpose devices or just single-purpose media players. The abstract idea is to take the hierarchical organization approach and apply it to this new type of device, the portable media player. Whether that portable media player includes something that can also do your email or simply does something that plays music isn't really relevant to the 101 analysis. It's still abstract. It's the abstract idea of taking a traditional idea and applying it to a new technological device that they didn't invent. All they're doing is applying it to this particular field of use, which as we know from Bilski analysis is not good enough. So I think the claim construction doesn't matter. If you'd like me to address the merits of the claim construction, I can, but I don't think that really does drive the 101 analysis at all. If the court is interested, I can address my opponent's argument about whether it's a technological solution to a technological problem. I don't think it's either. First of all, there's no technological problem here. These were devices that were in nascent form. The first ones had 10, 12 songs, an hour's worth of music. You didn't need a whole lot of organization to access them. Somebody else figured out how to put a hard drive on there, and now you've got hundreds or thousands of tracks and you need to organize them. But that was a known problem of how to organize files on computers. That had been done for decades, and the way they organized it was completely traditional. So there was no technological problem out there. It's simply taking the same solution that computing had always done, take hierarchical organization as a way to organize files. Nor was there any real technological solution because they didn't invent a new display, they didn't invent a new type of memory, they didn't invent a new type of file structure. All the types of things that we see in the court's cases that uphold cases under section 101, that's the kind of inventive concept you're seeing. Something that will actually improve the operation of the computer. This doesn't improve the operation of the computer. This is simply taking an organizational structure that was already existing on computers and applying it to a particular field of use. The argument, the response, is that it's improving the user's ability to access the information. Well, it's not really... The problem is that the improvement, the supposed improvement, is simply taking the abstract idea and applying it to this context. And that's not patent eligible. You can't rely on an abstract idea to supply your inventive concept at step two. Simply taking it and applying it to this type of device, which was a new type of device in the late 1990s, doesn't make it patent eligible. And that's the fundamental problem with this case, because the claims really are directed at a three-level hierarchy as applied to a portable media player. And I think under Bilski and Alice, that's a pretty straightforward issue. And then they're reaching to try to argue that somehow the sequence of three screens is inventive. And I just don't think the patent supports that that's what they were really trying to do here. And common sense will tell you that that's not something inventive. That's just simple post-solution activity, as the court has found in many other cases. Not exactly in this context, but simply gussying up an abstract idea does not make it a patent eligible invention. Okay. Thank you, Mr. Bagatelle. Mr. Baker. Thank you, Your Honor. I don't have anything further to add to our argument at this point. If the court has any questions, I'm happy to answer them. Otherwise, I'll sit down. Well, I think I'd like to ask you the same question I just asked Mr. Bagatelle. You're an expert, makes a statement of extraordinarily broad scope. And it obviously made an impression on the ALJ because he quoted it. These are general purpose devices for handling email. And if that's all that there is, and then we appreciate the broadest claim, several broad claims were canceled, which left perhaps a stronger case for saying that one can find an inventive concept. How do you put all that together? Yes. Well, the way I would put it together is to point out that it's not enough to be a general purpose device. It has to be... But that's what your expert says. It still has to qualify as a portable media player, meaning it has to be able to play media files. That's the construction that he supported, that a portable media player is a handheld device. But in the ALJ, you see it in the context of, therefore, you're seeking to enforce these claims against every general purpose device for handling email. Only if they meet all the other requirements of the claims. Put it a different way, the fact that it also does email, it doesn't take it out of the realm of infringement. If it does everything else a claim requires, it has a portable media player that can play media files. It has the three display screens. It can add tracks to a playlist. It still has to do the other things the claim requires. So the claim would certainly not cover a general purpose device simply because it can handle email and other tasks. It has to meet the claim requirements, which are a particular solution to the problem that the patent describes. Okay, anything else for Mr. Baker? Thank you. Thank you all. The case is taken under submission.